UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, as subrogee of Country Woods Condominium Association, Inc., *Plaintiff*, | 3:20-CV-00327 (SVN) |
| v. | February 23, 2023 |
| TORRINGTON WATER COMPANY, *Defendant*. | |

**RULING AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Sarala V. Nagala, United States District Judge.

In this negligence action, Plaintiff Community Association Underwriters of America, as subrogee of Country Woods Condominium Association ("Country Woods"), alleges that Defendant Torrington Water Company breached its duty of care in the design, assembly, testing, ownership, inspection, maintenance, and installation of a water main that ultimately ruptured, allegedly causing severe water damage to Country Woods, Plaintiff's insured.

Presently before the Court is Defendant's motion for summary judgment, arguing that Plaintiff has failed to provide admissible evidence that Defendant had a duty to Country Woods and breached that duty, or that such breach caused Country Woods', and ultimately Plaintiff's, injury.  For the reasons set forth below, the Court GRANTS Defendant's motion for summary judgment.

### I. FACTUAL BACKGROUND

The facts forming the basis for this action are largely undisputed, though certain facts appear to have been assumed by the parties and not set forth explicitly for the Court.  For instance, though neither party expressly states as much, it appears that Defendant was responsible for

providing water service to Country Woods. Assuming this is indeed the case, Country Woods receives its water from Defendant's "gravity-fed" system. Pl.'s Local Rule ("L. R.") 56(a)2 Statement ("St."), ECF No. 49-2, ¶ 6.[1]

The water main at issue was a cast iron pipe. Pl's. L. R. 56(a)2 St. ¶ 15. While the typical life expectancy of a cast iron water pipe is nearly one hundred years, such pipes can rupture unexpectedly. *Id.* ¶¶ 15, 16. The water main here was installed in the 1970s, and, thus, was not beyond or even near its life expectancy. *Id.* ¶ 17. Nevertheless, Defendant regularly took action to monitor the pipe, including using "devices" each evening to check for leaks in the system, and comparing the results of these efforts against a "correlation system" the following morning. *Id.* ¶ 18.

Buildings, such as Country Woods' condominiums, also take precautions to prevent damage from leaks. Residential units have external pressure-reducing valves to protect the inside of a home from any high-pressure fluctuations that occur within the water main. *Id.* ¶ 21. These valves reduce the pressure of water when it enters through water meters into a residential unit, only allowing water pressure at the level to which the pressure-reducing valve is set. *Id.* ¶ 25. These valves should be replaced every five years to make sure they remain in good working order. *Id.* ¶ 22. If a pressure-reducing value is not functioning properly, greater pressure than desired can get into the unit and cause leaks. *Id.* ¶ 27.

In addition to external pressure-reducing valves, individual water heaters in residential units have pressure-reducing valves that will allow water to spray out if the pressure entering the home is higher than desirable for the water heater. *Id.* ¶ 28.

---

[1] Where facts are undisputed, the Court cites only to Plaintiff's L. R. 56(a)2 Statement.

On October 17, 2019, the water main near Country Woods ruptured. *Id.* ¶ 1. The water pressure at Country Woods decreased after the water main broke because most of the water in the system was escaping through the break. *Id.* ¶ 8. Once the break in the water main was isolated, Defendant started shutting valves in the water main. *Id.* ¶ 9. After Defendant shut the valves, water pressure returned to its static levels. *Id.* The parties agree that, after Defendant fixed the water main break, certain units in Country Woods had fifteen to twenty gallons of water expelled through the operation of the pressure-reducing valves on their hot water heaters. *Id.* ¶ 29. This expulsion of water caused a "large amount" of damage. *Id.* ¶ 30.

The parties agree that, as of October 17, 2019, most of the external valves at the Country Woods facility were approximately thirty years old, and some units had no such valves at all. *Id.* ¶ 23. The parties agree that if the units had external pressure-reducing valves in good working order, the valves would have held back any surge in pressure when the water returned to its pre-rupture pressure level following the repair of the water main. *Id.* ¶ 24.[2]

Presumably, although again not stated explicitly by the parties, Country Woods filed an insurance claim with Plaintiff related to the damage caused by the expulsion of water by the water heaters. The summary judgment submissions do not make clear whether Plaintiff has ever paid any money to any party because of this incident. As best the Court can discern from the complaint, however, Plaintiff alleges it paid approximately $150,000 to Country Woods for the water damage. *See generally* Compl., ECF No. 1, at 4. As Plaintiff believes that these damages were the result of Defendant's negligence, it now seeks to be reimbursed what it was allegedly required to pay to Country Woods.

---

[2] The factual disagreements between the parties in the instant case stem largely from a contract that Defendant claims required Plaintiff to maintain and replace the external pressure-reducing valves that could have prevented the water damage at issue. *See id.* ¶¶ 31, 40–41. The Court will address these issues, to the extent they are relevant, in its analysis of the merits of the instant motion.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is the moving party's burden to show there are no disputed material facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by pointing out an absence of evidence to support the non-moving party's case. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002). If the moving party demonstrates there are no disputed issues of material fact, the burden shifts to the non-moving party to rebut this showing through introduction of "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). When examining the record, "the court must resolve all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992). Thus, "only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## III. PLAINTIFF'S EXPERT AFFIDAVIT

Defendant has moved for summary judgment, contending that there are no disputed issues of material fact as to whether it owed a duty to Country Woods, whether it breached that duty, and whether Defendant's actions caused Country Woods', and, as a result, Plaintiff's damages. In arguing that there are genuine disputes of material fact concerning those issues, Plaintiff relies exclusively on the three-page expert affidavit of a professional engineer, John Titus, who opines (in conclusory fashion) that Defendant would have been "well-aware of the dangers and high

likelihood of equipment failures and [pressure-reducing valve] discharges resulting from a high-pressure water service," ECF No. 49-3 at 3, ¶ 6; that Defendant "had a particular responsibility to (1) alert and inform the user (Country Woods in this case) of the high-pressure exposures attendant to the use of their water supply service, if not (2) directly remediate the high-pressure exposure," *id.*; and that Defendant "breached its plain and simple obligation to the Country Woods Condominium Association," *id.* at 4, ¶ 11.  Defendant contends that Titus was not disclosed until Plaintiff's summary judgment opposition briefing and, thus, the Court should not consider his affidavit in deciding its motion.

For the reasons discussed below, the Court concludes that it will not consider the Titus affidavit in deciding Defendant's motion because Plaintiff failed to timely disclose Titus as an expert witness under the Federal Rules of Civil Procedure.  Rule 26(a)(2) requires that a party disclose to the opposing party the identity of any expert whose testimony the party intends to introduce at trial.  Fed. R. Civ. P. 26(a)(2)(A).  This disclosure must include a report that contains a complete statement of the opinions of the witness, the facts used to form those opinions, any exhibits that will be used to summarize the opinions, the witness' qualifications including publications from the last ten years, a list of other cases the witness testified in during the last four years, and a statement of what compensation the witness is receiving in exchange for his or her testimony.  *Id.* at 26(a)(2)(B).  The disclosure must be made in accordance with the timing and sequencing ordered by the Court.  *Id.* at 26(a)(2)(D).  If a party does not disclose an expert in accordance with Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c).  The reason for this rule is very simple:  "to prevent the practice

5

of sandbagging an adversary with new evidence." *Kalra v. Adler Pollock & Sheehan, P.C.*, No. 3:18-CV-00260 (KAD), 2022 WL 280180, at *5 (D. Conn. Jan. 31, 2022).

Here, the final scheduling order provided that Plaintiff was required to disclose its experts by December 13, 2021, and that Defendant could depose such experts by January 9, 2022. *See* ECF No. 31 (adopting schedule proposed by parties in ECF No. 30). Expert discovery was scheduled to be completed by February 28, 2022, and dispositive motions were due April 13, 2022. *Id.* at 1–2. Defendant contends Plaintiff knew about Titus being retained as an engineering consultant no later than November 13, 2019, and yet failed to disclose Titus as an expert in this matter until May 11, 2022, when Plaintiff submitted Titus' affidavit in opposition to Defendant's summary judgment motion. *See* ECF No. 49-3. Plaintiff has not sought leave to file a surreply brief to respond to Defendant's contention.

In order to determine if expert testimony should be precluded because of improper disclosure, the Second Circuit employs a four-factor test. The factors considered are: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997).

Turning to the first factor, Plaintiff provides no explanation for its failure to disclose Titus prior to its summary judgment briefing. Instead, Plaintiff simply submits an affidavit from Titus as though he had been properly disclosed months ago. Following the submission of Defendant's reply briefing, which highlighted Plaintiff's failure to disclose Titus as an expert witness, Plaintiff did not seek to file a surreply or provide the Court with information suggesting Titus was timely and properly disclosed as an expert. Thus, the first factor weighs in favor of preclusion. *Kalra*,

6

2022 WL 280180, at *8 (where party offering undisclosed expert affidavit in opposition to summary judgment provides no explanation for the lack of disclosure, the first factor weighs in favor of preclusion).

As to the second factor, there is no doubt that this testimony is crucial to Plaintiff's opposition to the motion for summary judgment. In fact, Plaintiff's arguments regarding duty and causation rely exclusively on Titus' affidavit. Without this information, Plaintiff's brief would have essentially no argument on two of the elements necessary for a negligence cause of action to succeed. *See* ECF No. 49 at 4–7. It is thus clear that the second factor counsels against preclusion of the expert affidavit.

The third factor, however, once again cuts in favor of excluding the testimony. Here, Defendant has had no opportunity to depose Titus, nor any opportunity to share his findings with an expert of its own or otherwise attempt to challenge them. To put it simply, "the prejudice inflicted in situations such as this is precisely why the rules are designed to avoid trial by ambush." *Kalra*, 2022 WL 280180, at *8. Thus, the third factor decisively favors preclusion of the Titus affidavit.

Finally, the Court examines the possibility of a continuance. Here, as in *Kalra*, "Plaintiff[] elected to disclose [its] expert through [its] motion for summary judgment." *Id.* After receiving several extensions of time, Plaintiff was required to disclose any expert witnesses no later than December 13, 2021. ECF No. 30 at 2. Further, all discovery was to be completed by February 28, 2022. *Id.* The fact that discovery in the instant matter is already closed "weighs strongly against any possibility of a continuance." *Colon v. Linchip Logistics LLC*, 330 F.R.D. 359, 368 (E.D.N.Y. 2019); *Spotnana, Inc. v. Am. Talent Agency, Inc.*, No. 09 CIV. 3698 LAP, 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010) (discovery being closed for four months prior to

disclosure of expert weighed strongly against granting a continuance). Any extension of time would unnecessarily delay resolution of this case. Thus, the fourth factor weighs in favor of precluding the Titus affidavit.

In sum, Plaintiff has provided no reason for its failure to disclose its expert in the normal course. Allowing it to nevertheless rely on an expert affidavit in its attempt to defeat Defendant's motion for summary judgment would greatly prejudice Defendant and, at a minimum, require the Court to allow Defendant to conduct additional discovery and resubmit its motion for summary judgment at the conclusion of such discovery. Courts in the Second Circuit regularly prohibit reliance on an expert affidavit at summary judgment where the expert was not timely disclosed. *See Caruso v. Bon Secours Charity Health Sys., Inc.,* 703 F. App'x 31, 33 (2d Cir. 2017) (summary order) (affirming preclusion of expert reports from consideration in opposition to summary judgment where the experts were not previously disclosed); *Kalra*, 2022 WL 280180, at *8; *Colon*, 330 F.R.D. at 368; *Spotnana, Inc.*, 2010 WL 3341837, at *2. The Court will do the same in this instance. The affidavit of Titus, and any opinions contained therein, will not be considered by the Court in determining the outcome of Defendant's motion for summary judgment.

### IV. **NEGLIGENCE**

Under Connecticut law, for a plaintiff to succeed on a negligence action, the plaintiff must establish the four traditional elements of the tort: "duty; breach of that duty; causation; and actual injury." *LaFlamme v. Dallessio*, 802 A.2d 63, 67 (Conn. 2002). Defendant contends that it is entitled to judgment as a matter of law with respect to Plaintiff's cause of action for negligence because there are no disputed issues of material fact as to whether it owed a duty to Country Woods, whether it breached that duty, and whether Defendant's actions caused Country Woods', and ultimately Plaintiff's, damages. *See id.* ("plaintiff must meet all of the essential elements of

the tort in order to prevail"). The Court turns first to Defendant's claim that it owed no duty to Country Woods.

"The determination of whether a duty exists between individuals is a question of law." *Jaworski v. Kiernan*, 696 A.2d 332, 335 (Conn. 1997). Only if the Court determines that such a duty exists "does the trier of fact go on to determine whether the defendant has violated that duty." *Id.* Under Connecticut law:

> the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. ... The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy.

*Murillo v. Seymour Ambulance Ass'n, Inc.*, 823 A.2d 1202, 1205 (Conn. 2003) (punctuation in original). The Court thus turns to examine whether such a duty existed here.

In the complaint, Plaintiff alleges that "Defendant owed a duty of reasonable care to Plaintiff in regard to the design, assembly, testing, ownership, inspection, maintenance and installation, *inter alia*, of the main; Defendant breached this duty." Compl. ¶ 14. In its brief in support of its motion for summary judgment, Defendant concedes that it had "responsibilities owed to the watermain." ECF No. 43-1 at 3. Defendant's brief continues, however, to argue that Defendant had no duty regarding any of the pipes or equipment that delivered water directly to Plaintiff's condominium units. *Id.* at 4. Specifically, Defendant argues that it owed no duty regarding any pressure-reducing valves installed either inside or outside the individual units at Country Woods.[3] *Id.* In opposing Defendant's motion for summary judgment, Plaintiff abandons

---

[3] Defendant relies in large part on a contract entered between it and an entity known as "R.E.I. IV" allegedly stating that Defendant would have no responsibility for any pressure-reducing valves. In part because the facts surrounding this contract and who exactly R.E.I. IV was, or is, are grossly underdeveloped in the record, and in part because it is

any mention of a duty to maintain the water main itself. Instead, relying solely on Titus' alleged expert opinion, Plaintiff argues "it is Defendant's duty to (1) alert and inform the user (in this case, Country Woods) of the high-pressure exposures attendant to the use of their water supply service, if not (2) directly remediate the high-pressure exposure." *See* ECF No. 49 at 4 ("B. The Elements of Duty, Breach, and Causation Are Supported by the Affidavit of Plaintiff's Expert, John Titus, P.E."); *id.* at 5. Titus continues that Defendant "was obligated to serve as a reliable, trustworthy, and competent service provider." *Id.* at 5.

Plaintiff offers no evidence of any kind outside of the expert report of Titus to support its argument that Defendant owed Country Woods a duty of any kind. As discussed above, due to Plaintiff's failure to disclose Titus as an expert witness at the appropriate time, the Court will not consider the Titus affidavit in deciding Defendant's motion for summary judgment. Eliminating that affidavit leaves Plaintiff with absolutely no evidence, or even argument, supporting the idea that Defendant owed Country Woods a duty of any kind. Because Plaintiff has failed to raise a genuine issue of material fact regarding whether Defendant owed Country Woods a duty, Defendant's motion for summary judgment must be GRANTED.

## V. CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendant and close this case.

---

not necessary for the Court's analysis, the Court will not reach any arguments advanced by either party regarding this contract.

**SO ORDERED** at Hartford, Connecticut, this 23rd day of February, 2023.

                                         */s/ Sarala V. Nagala*
                                         SARALA V. NAGALA
                                         UNITED STATES DISTRICT JUDGE